The next case this morning is 20-2018 Hendrickson v. AFSCME Council 18. Counsel, please prepare to argue. Good morning, Your Honor. Good morning. Thank you. Brian Kelsey on behalf of plaintiff appellant Brett Hendrickson, and may it please the court. This case really turns on one sentence. To give your consent, you have to know what you're consenting to. To give your consent, you have to know what it is that you're consenting to. And in Janus versus AFSCME in 2018, the Supreme Court said that non-union members must give their affirmative consent to waive their constitutional right to pay nothing to the union. Hendrickson never did that. Instead, Hendrickson was given an unconstitutional choice between paying union dues or paying 87% of that amount. Well, Counsel, how is there any lack of consent or mutual mistake at the time that Mr. Hendrickson signed the membership agreement three times, given that Abood was the governing law at that time? Judge Matheson, that's a good question, and I think you're exactly right. The question is, at that time, did he give his affirmative consent? And the question is also, what did he give his affirmative consent to? He certainly gave his affirmative consent, given those circumstances, to have those union dues taken out. What he did not give is what is required by Janus, and that is affirmative consent to waive his constitutional right to pay nothing to the union. Well, now wait a minute. Wait a minute, Counsel. Why should he be able to void his membership post-Janus, based on a change to the law that didn't make the contract itself illegal, but might have affected his decision to enter the contract in the first place? Because that is the law of the circuit, as well. What's your authority for that? Yeah, that is the U.S. v. Bunner case. Say that again? U.S. v. what? Versus Bunner, B-U-N-N-E-R. All right. And that's a Tenth Circuit case from 1998, and in that case, it said that there was an intervening United States Supreme Court decision, and that stands for the proposition that that subsequent decision constitutes a mistake of law that allows the party to reopen that agreement to choose one option versus another. Is this the plea agreement case? It is. Okay. And in that case, it frustrated the entire purpose of the plea for one crime and dropped the other things in the indictment, and the whole point of it was to have him plead guilty to a crime, and once the court decided there was no crime at all, it completely frustrated the purpose of the contract. But here, it doesn't frustrate the purpose of the contract. He agreed, he entered into three times to be a member of the union and to have the benefits of that bargain. In the plea agreement case, the federal government and the defendant both lost what they were bargaining for. So, I don't think that case helps you. Well, I appreciate that view, Your Honor, but I think that the correct analogy in that case is between Hendrickson and the prosecutor, and in that case, it was the on those three other crimes, those three other causes of action. In exchange for a guilty plea to another crime. So, the benefit of his bargain was completely frustrated because what the defendant pleaded to was not a crime. Here, the benefit of the bargain, the contract, was I pay union dues, I get services from the union. Nothing about Janice speaks to a union member who voluntarily enters into a union contract. Nothing about Janice frustrates the purpose of that agreement. Well, and I would respectfully say that the alternative in that Bunner case was ruled unconstitutional, just like in this case, the alternative was for Mr. Hendrickson was to pay 87% of union dues. That is no longer the alternative. The alternative that is the law of the land under Janice now is that he gets to pay zero dollars to the union. But in Bunner, the intervening case invalidated the crime. Here, nothing about Janice speaks to whether someone who voluntarily becomes a member of a union, it doesn't invalidate that. It doesn't even speak to that. It only talks about charging dues to non-union members. Your Honor, the union case, it does argue that Janice applies to non-union members, and that's because Janice himself was a non-member. But that's not all that the case says. It says, quote, employees must clearly and affirmatively give their consent. So, the Janice decision applies to all government employees at the time that they're presented with the decision whether to join. And it sets forth the criteria by which someone can move from being a non-member to a member. Counselor, let me just make sure I'm, if I'm understanding your argument correctly, if you turn the clock back to when Mr. Hendrickson signed his membership dues deduction authorization three times, if Janice had been decided at that time, it would have changed his calculus, I suppose. Your argument is he might have thought about joining the union differently. Is that basically your argument? That's exactly the argument, Your Honor. Okay, and again, I'm just not understanding how the plea agreement cases get you there. Well, those cases state that when an intervening U.S. Supreme Court decision rules that one of the two options is unconstitutional, then that bargain is reopened and you can choose the other option, and that agreement is foreclosed. Just like the prosecutor no longer had to stand by his agreement not to prosecute on the other three crimes, in this case, Mr. Hendrickson no longer has to stand by his decision to pay 100 percent of union dues. And in fact, the facts, we did not harp on this point because I don't think it's necessary in our briefings, but the facts show that we actually pled coercion the first time that he signed his union card back in 2007. He had left the Department of Human Services. He had gone to a different department that was not covered by AFSCME. He came back to the Department of Human Services, and for six months he did not pay a dime even of agency fees. And that is when the union approached him with this unconstitutional choice. He's of limited means as a state employee. He couldn't afford to pay the full six months of back agency fees at that time. He felt coerced into making the decision to choose to pay the full union dues at that time. And that is when the unconstitutional waiver to pay nothing was never given to him. So the Janus decision even says on this very point, it says, quote, by agreeing to pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed. So that sentence cannot be talking about Janus himself because he never agreed to pay anything. It's talking about nonmembers like Hendrickson used to be back in 2007. And it says that when he does agree to pay, he can only do so by waiving his First Amendment right. And he's never been able to do that. That may be possible going forward, Your Honors, certainly. But it was at the time. By signing the agreement, which he did, did he become a union member? According to the laws that were in place at the time. According to the agreement. According to the terms of the agreement, which is unconstitutional now, yes, he did. I understand. I understand your argument. But he became a union member. Had he been a union member prior to signing the agreement? He had not, as is the case with all union members. They're not born union members. They have to become union members. And the Janus decision describes the criteria by which they become so. Had he previously been a union member? Originally, the Department of Human Services, when he was first hired, was actually not covered by a collective bargaining agreement. So he was not originally. In previous years, had he been a union member? As I mentioned before, he started paying those union dues back then. I don't want you to seem as hostile to you. I'm just trying to find out, to understand your case, whether he had been a union pursuant to the terms of this agreement. Well, as Judge Matheson said, he signed the agreement. The first one, I believe, was back in 2007. And there were two subsequent agreements. All right. So the answer is yes. By virtue of those two previous agreements, he had been a member. That's right, Your Honor. And that's why I'm harping on the 2007 decision. And I'm harping on the language of the Supreme Court that talks about members and non-union members and trying to determine the status in which your client fits. Right. And again, I wouldn't say it. The Janus decision is very clear. It applies to employees. Employees must give affirmative consent. An affirmative consent by employees when I sign an agreement that says I hereby join the union and authorize you to deduct union dues from my pay. I mean, isn't that an affirmative consent? It is, Your Honor, an affirmative consent based on an unconstitutional choice that was given to me. And so with that, Your Honors, I would refer to you as a counsel. Counsel, I need to ask you another question concerning your exclusive representation issue. And that is, this is your ability to sue the governor and the attorney general. The New Mexico Supreme Court has said that the PELRB must remain free from the executive's coercive influence. Doesn't that mean that the governor and the attorney general are not proper ex parte young parties and that you should at least have sued members of the PELRB in addition to them? Well, first of all, Your Honor, I just would like to point out that you're correct, that the district court only applied this ex parte young analysis to the second claim for not entirely clear from the briefing. But in that instance, the reason why the governor and the attorney general are the proper parties, because the issue is not whether the public employee relations board, labor relations board, not whether those laws that they're applying, it's not whether they were being properly applied, but rather it's whether they were constitutional in the first place. And that's why under the case of Petrella versus Brownback from this court, the attorney general and the governor are the proper defendants when the constitutionality of that statute is called into question. All right, you want to reserve the rest of your time, it's reserved. Thank you, Your Honor. Thank you. All right. Counsel, we're ready to hear from you. May it please the court, Eileen Goldsmith for AFSCME Council 18. I'm sharing time with counsel for the state defendants and I'll turn it over to them after 10 minutes. So there are a great many issues that are addressed in the briefs and addressed just now, but the court really only needs to reach a few of them. First, there's no First Amendment infringement in giving effect to plaintiff's own authorization to pay jitters. And any prospective relief claim in connection with that issue is moot. And second, exclusive representation, collective bargaining does not infringe plaintiff's First Amendment rights as every circuit to reach the issue is held and as the Supreme Court held in night. But I want to take a step back because we've been talking a bit about the facts here. Plaintiff never paid... This is about whether the state can, by operation of law, require people who have never joined the union, who have never authorized the payment of dues, can require those people to have money deducted from their paychecks when opt-out system where their consent to those payments is presumed. And Janice has nothing to say about people who affirmatively decided to become union members and instructed their employer to deduct dues from their paycheck affirmatively. Was this a choice that was available to Mr. Hendrickson, or was it de facto essentially foisted upon him? It was not foisted upon him at all. Both just in terms of looking at the summary judgment record, which we have as undisputed facts in this case, and as a matter of this choice is not foisted upon him at every moment of his membership, which actually goes back to 2003 to 2004. He had the choice whether to be a union member or not. And part of being a union member was agreeing to pay dues. And plaintiff, you know... Though it was not a term of condition of his employment that he be a union member. That's correct. That's correct. He chose that. He actually, as the summary judgment record shows, he signed an authorization to have the union recognized as the exclusive representative of his bargaining unit with the state back in 2003. He signed his first union membership card in 2004. He was quite an active member, as the record shows, and was in fact on the bargaining unit against this in collective, excuse me, on the bargaining committee in collective bargaining against the state, and continued to exercise his rights of membership. He signed a new membership card in 2007. Council's comments about the coercion there are allegations in the complaint that are not in the summary judgment record, and should for that reason be disregarded. And he signed another authorization in 2017. And in exchange for those authorizations, he received those benefits of membership, which he in fact exercised. And one other question, and that is, come December of let's see, last year, I guess, did he opt out then of no longer being a union member? Yeah, so what he did was, the first time the union became aware that he wanted to resign his membership was when he filed this lawsuit. That was November 30th of 2018. So that would be 18. So as of 18, he was no longer a union member. Correct. As soon as he filed the lawsuit, and the union became aware of his desire to resign his dues deductions were terminated. The effect of this, of anything we could do, would basically be to, at best, refund partial dues for 2018. Yeah, plaintiff has his prayer for relief calls for a refund of dues paid to the union while he was a member. But he never paid any amount that he did not authorize. And so enforcing or giving effect to his authorization doesn't infringe any First Amendment right. It's the equivalent to the Supreme Court's holding in Cohen v. Coles Media, parties can impose obligations upon themselves. And those obligations can be given effect without infringing the First Amendment rights. And it's just the same as the Ninth Circuit held in Belgau, and the Third Circuit held in Fisher, which we submitted earlier this week, and in Oliver. And we would encourage the court to agree with the Ninth Circuit and the Third Circuit on these issues. So, counsel, just to be clear on the timeline here. My understanding is that he did notify the state agency about withdrawing his Ask Me membership in August of 2018, but his dues continued to be deducted. Why wouldn't he be regarded as a non-member at that point and be able to recover those dues, just as non-members shouldn't, under Janus, have to pay the agency fee? So he didn't actually attempt to resign his union membership in August of 2018. If you take a look at the record, Your Honor, and this is in the supplemental, the appellee's supplemental appendix at 110. What plaintiff did in August of 2018 was he sent an email to the state personnel office, and he said, when can full members resign and stop their dues deductions? And he didn't contact the union. That's undisputed fact in the summary judgment record. He didn't say, I want to resign and terminate my dues deductions right now. He said, when can full members terminate their dues deductions? And the state personnel office responded, in effect, full members can terminate their dues deductions in the December window period. The union heard nothing from plaintiff until he filed this lawsuit against the union several months later, which happened to be at the beginning of the window period when dues deductions could be terminated, and therefore they were terminated. So do you argue mootness? Yes. So plaintiff has raised, he's seeking to enjoin the future operation of the union's dues deduction agreements with respect to the revocation period. But this has zero effect on plaintiff because his dues deductions have already been terminated, and the only way they could ever resume is if he were to reauthorize those deductions and rejoin the union. And there's no realistic likelihood that the union could in any way seek to have the state take the deductions from his wages under any other circumstance. And his suggestion that there should be some kind of prospective relief because it might affect the world at large is just not at issue here because this is a single plaintiff case. It's not a class action. The only person with any interest at stake here is plaintiff himself, and he has no realistic risk of any future harm. How does Ex parte Young come into play? I would like to defer that issue to the state's council, if I may. That's fine. Yeah. And the only other point I wish to just briefly address before I turn it over to the state is this mistake of law question. But you have 50 seconds to do so. Okay. The more salient authority here is not Bunner. It is the Brady case and the Fisher case and Belgau and Oliver. The issue in Bunner, which I think the court clearly understands, is that the bargain that the parties actually struck fell apart when the offense the plaintiff had pleaded to was no longer a crime. The difference with our case that makes it more like Brady is or Coltec, Fisher, USP Porter in this court. The difference here is that what the parties agreed to was lawful at the time, and it was complete at the time, and it continues to be so today. And with that, I'd like to turn it over to Mr. Marcus. Thank you, Mr. Marcus. Thank you. Thank you, Your Honor. Larry Marcus on behalf of the state defendants or state appellees. So first off, I just want to say that the state appellees are fully aligned with the union regarding both the issue of the revocability period and regarding the difference between this case and Janus as well as the issue of the exclusive representation. So we're in alignment with the counsel for the union on that. But in addition, we are arguing that the state defendants are not the proper defendants. And Your Honor, you brought up Ex parte Young a minute ago. Ex parte Young, of course, is the exception to the 11th Amendment, which allows the bringing of a claim for prospective relief against the state official in his official capacity. However, in order for that exception to apply, that state official has to be able to do grievances. And in this case, neither the governor nor the attorney general could actually take any there's there's nothing that the court can order the governor or the attorney general to do regarding the exclusive representation. The exclusive representation is part of the PIPA, the Public Employees Bargaining Act. And the PIPA is not enforced by the public employees is not enforced by the governor or the attorney general. Most statutes would be enforced by the governor of the attorney general. So in most cases, if you're trying to determine declare a statute to be unconstitutional, it would be the governor and the attorney general that you would file a lawsuit to enjoin them from enforcing the statute that you believe to be unconstitutional. But in in this case, the statute is not enforced by the governor, the attorney general is enforced by the Public Employees Labor Relations Board, the P.E.L.R.B. And it is those individuals, is those those board members who they're the ones who certify the exclusive representative. They're the ones who they handle the negotiations. If there's a dispute regarding who the exclusive representative is, it's the P.E.L.R.B. that handles all of those issues. And well, counsel, could could you just address why isn't it enough to sue the governor under Ex parte Young, given that the governor appoints the members of the board and also is the elected official responsible for the New Mexico Human Services Department, which employed Mr. Hendrickson and also the state personnel office, which, as I understand it, carries out the dues deduction through the payroll system. Why isn't that enough to bring the governor in? Because the well, the governor appoints the members of the P.E.L.R.B. She does so under a constrained system. One member is selected by the labor unions. One is selected by employers, by state agencies, and one is selected or or other public employees. And the other is selected by the other two. And so the governor just sort of goes along with it. I don't want to say she's quite a rubber stamp in many ways. She isn't in this case. And she absolutely cannot fire these individuals. These individuals serve a fixed term and the governor is no firing ability. And this is by design to keep the to keep the board as a as a neutral arbiter between labor and management. And you can't have management having too much control over it. Otherwise, the whole system doesn't work. It's not no longer neutral. And the P.E.L.R.B. and the state as the as the bargaining. As the exclusive representative for that bargaining, they and yes, they do deduct the dues, but that's that's a ministerial of strictly ministerial action. And they do that when the labor union gives them a list and tells them to deduct these these dues. And they wouldn't otherwise even find out about it unless the labor union who they wouldn't even find out someone withdrew unless the labor union told them. So they are all of these individuals in this regard. They're essentially rubber stamps here. And so they are not the proper defendants. They cannot be ordered to do anything that would change anything for the. They could be ordered not to deduct the dues. Or not to deduct the dues for who, though, for any. It would only be people who the labor union said are no longer members of the union. So you'd have to order the labor union not to these names to the. To the Human Services Department, but they that once the once the names are. It's not the job of the Human Services Department or the state personnel office to figure out whether someone's whether someone should have been allowed to quit earlier, quit the union earlier that. That would not be within what they're what they're legally authorized to do. Mr. Marcus, if I may, please, Judge Matheson, if I may as well, is is this action brought by Mr. Hendrickson collectively on behalf of others or what's the nature of the representation? No, no, your honor. It is not collective. He brought it on his own behalf. Then why isn't this case moot? It is moot. I think it's moot. And I agree with that. Has there been a jurisdictional motion on this case? It was part of the it was part of both the motion to dismiss and the motion for summary judgment. All right. Thank you. Thank you. Well, let's let's hear from your colleague. And if you'll add a minute and 19 seconds to his time, please, Mr. Thank you very much, your honors. Thank you. You may proceed, Mr. Kelsey. Thank you very much, your honor. A couple of facts to clear up because they relate directly to your last mootness question. Just to go back. He started working for the state in 2001. His department unionized in 2003. Then he left work for another department. He did not join in 2003. He left, came back to work. And that's when the 2006, 2007 issue that I mentioned regarding coercion came up. But the more important fact on mootness, your honor, is the fact about what he did in August of twenty eighteen. So this was now two months or a month and a half after the Janice decision, but before his his two week escape window period came open in December of twenty eighteen. Yes. But if Miss Goldsmith is correct and we have to join issue here at these points because I just don't want to waste our time if this is a serious problem. She says that really it wasn't until December after the time the open window had come into play that you did anything affirmatively to notify the defendants in this case that you didn't want to be a union member anymore. And that was the filing of your lawsuit. But by then you could have elected not to be a member anyway under the open window that was available to you. And I just don't see why the case isn't moved from the get go. Well, your honor, it's not moving. You don't purport to bring this case on behalf of others. That's correct. Well, you don't do so in a representative capacity. You filed a lawsuit in your own name. That's that's correct, your honor. And so back in August twenty eighteen, he sent one email and in that email that you can read in the record, it references an earlier email, which neither party has anymore. But he he notified his employer, who was the one who was actively taking the dues from his paycheck. And it was up to them to to notify the union that they were stopping the deduction. They did not do that because they were following the New Mexico statute, which is still on the books today. So it is money damages. Let me interrupt. I've got the email right in front of me and there isn't any record evidence of a prior email. So we can only speculate to that. But he says, good afternoon, Sandy. I seem to have lost your response regarding four full union members. Are we able to withdraw as full members now or do we have to wait for a certain amount of time? Thank you ahead of time for your response. I mean, that's an inquiry. It's not a I want to quit the union, stop deducting dues because he had asked already that he had asked to stop deducting dues. But the answer that was given is no, it doesn't say that. It doesn't say I asked before to stop deducting dues. It says I seem to have lost your response regarding full union members. We have no idea what all we know is it was regarding full union members. Well, respectfully, Your Honor, that that's not the record on summary judgment. The record is that, as Miss Goldsmith said, the record is that there has been there was no direct communication made to the union, but there no one has claimed in this case that he never requested to resign in August 2018 from the state. And that because of that money, that's why this is relevant. Whether anybody's claimed it. The point is that you have to have said, I want to I want to quit. I want my money back. Your client didn't do that until this lawsuit was filed and by then was really an academic exercise. He had the right to withdraw from the union as a matter of right under the terms of his contract, irrespective of anything that Janice may have said on the subject. Well, the reason why I say it is relevant, Your Honor, is because it must be in the summary judgment record that they're disputing that fact that we have put into our First Amendment complaint. And that's not in there. So it's so it's not moot because it's a claim for money damages, if I may finish this one point, and because of that claim for money damages, that is why wrapped into that, you necessarily have to make a decision as to whether New Mexico Statute 10-7E-17 is constitutional, which is the statute that allows for these escape window time periods. Thank you. Thank you, Ms. Goldsmith. You're saved by the bell. You have 22 seconds. It's what your colleague here's run over. So you've got 22 seconds. Um, thank you, Your Honor. I would just respond that the First Amendment complaint allegations really wash out at this point because we have a summary judgment record. And I would encourage the court to look at the summary judgment record. Thank you. I have nothing further. Thank you. Thank you very much. Thank you, counsel. The case is well argued. The case is submitted. Counselor excused.